Case number 23-1160. Thomas Shands, Appellant v. Cmsnr of Infernal Revenues. Ms. Blank for the Appellant, Ms. Abella for the Invalid. Good morning. Before we get started, I just wanted to confirm. So we're having open proceedings in court today. And do parties agree that also the briefs that you filed in the court are open, and if not, clarify and maybe submit something in writing? The government agrees. Terrific. All right. We have that on the record, and then we're ready to proceed, Ms. Blank, when you are ready. Good morning. If you want the podium down, you can adjust it. Good morning, and may it please the court. My name is Stacy Blank. I'm here today on behalf of the Appellant, Thomas Shands, and I have reserved two minutes of my time for rebuttal. Mr. Shands seeks a whistleblower award in connection with OVDI proceedings involving the U.S. clients of the Swiss bankers and banks he identified in his whistleblower information. The IRS denied Mr. Shands' claim for the purported reason that it did not take any action with respect to any taxpayer who participated in the 2011 OVDI program. Mr. Shands sought review of that denial in the tax court, and the tax court dismissed his petition for lack of subject matter jurisdiction for the same reason, that is, that the IRS took no action with respect to any taxpayer. Could you clarify what your client was requesting? Because it seemed like he might have been requesting 30% of the $2.1 billion that the entire program brought in. I put that on appeal. You seem to be trying to narrow that to certain particular taxpayers, but that's not really in the record who that would be, and it's not clear that that was requested in the court below. So from the very beginning, from the Form 211, Mr. Shands indicated that his claim would encompass the proceeds that the IRS collected from others, including the clients of the bankers and the banks. And so all of them, including the specific one? Correct. Correct. And so the ones who were particularly the customers of the bankers and the banks were a subset of the broader, but again, keep in mind that this has always been limited by the fact that in a related action, you cannot be more than one step removed from the original actors. Is that an alternative theory, though? Is this all one theory, or is the related action an alternative theory to it's a proceeding? I would not say that it's an alternative theory. I think that the related action addresses the concern that the government raised that the participants in the OVDI proceeding were not specifically identified. And so in a related action, of course, you don't have to specifically identify. And so that's why the related action is important to address the issue with respect to the specific U.S. clients that there was no requirement for Mr. Shands to identify them. So long as they met the remaining tests for being a related action. If we were to agree with you that the tax court did have jurisdiction over the petition, what would you have us do? Should we reach the merits and decide? You say in some places the court should decline to reach the merits. Then you say to the extent the court is inclined to consider the merits. I think it depends on how strongly you agree with me and on what points. Mr. Shands contends that all of the OVDI proceedings are administrative action. And if, in fact, that's the conclusion that the court reaches, then I think the appropriate remedy would be to remand to the tax court with instructions that the tax court then further remand to the IRS for calculation of the award. Administrative action is only a threshold question, and it's unclear to me whether we would need to reach that. I know that's the ground on which the tax court relied. But I take your position in part to be that the Form 211 here is the base. In fact, in part, but wholly, that the Form 211 that was filed is the basis of this action. And therefore, that to the extent the IRS is treating the OVDI taxpayers' claims as a separate action, you would be arguing, no, no, they are a related action or because of, based on the 211. So whether it's based on or related, your argument is, in a sense, it's beside the point whether there was any administrative proceeding separate and distinct from the undisputed administrative proceeding that already supports the whistleblower award that Mr. Shands has received. I think that's right. It's been the government's position that every slice of this has to satisfy the requirements of being a separate administrative action. And, of course, Mr. Shands has disputed that. But I think even if you were to accept the government's position on this, each individual OVDI proceeding with respect to a client would be an administrative action under the definitions in the regulations. And so, therefore, even if you accept the government's position with respect to every, it wasn't the 211 that gave rise to a single action and then everything flowed through that. I think that Mr. Shands has demonstrated that even if you reject that position and you look and see whether every separate claim number that was assigned by the service to Mr. Shands' claim satisfies the requirement of an administrative action, it does. I mean, I think the service responds every tax filing, every taxpayer who files a correction to their, or a missing return or a correction, does that automatically, in your view, become an administrative proceeding? No, not at all. But this is very different than that. Do we know enough to conclude that this is very different from that? I think we do. I mean, we understand what happens in an OVDI proceeding, even though we don't know exactly what happened in each of these. We know what's required in the initial application. We know that the taxpayer has to provide not only the original returns and corrected amended returns, but any informational filings that relate to the offshore assets. Taxpayers have to file statements identifying all of their offshore assets, all of their bank accounts. They have to identify the banks in which those accounts are held, and they have to identify all the people, facilitators is the word that's used, for people who help them manage those assets. But in most cases, they submit that information, and then they just pay what they calculate to be the penalty or the back taxes, and there's no action by the IRS. Well, I don't know that to be true, because what happens next is that... That's not how it works? Well, it's assigned to then a revenue agent or an examiner who then conducts a fairly comprehensive review. Now, I think the government would say not a full examination, but as in my reading, the only thing that's different between what happens then and a full examination is the scope. Then the revenue agent... So an examination is an audit, right? That's exactly right. It sounds to me like what they're doing in this OBDI program is not so different from when we file our taxes. No, I don't... We kind of self-assess, and then we say this is what we owe. Well, that's the first step, but that's not the only step. Then the revenue agent looks at it and says, okay, do I want to ask more questions? Do I want to send document requests? And they do, often. Do I want to conduct third-party witness interviews? Which they do. I guess the bottom line is sometimes it's an action and sometimes it's not, because if all they do is review the information and accept what you say you're going to pay, it's not an action against the taxpayer. Well, I mean, there are a lot of characteristics of it that are much beyond what you do if you just file a corrected tax return. You have to sign an agreement, for example, to extend the statute of limitation on any taxes or... It has to be an action against the taxpayer. I'm sorry? Do you agree that to be an action, it has to be an action against a taxpayer? That's in the statute. Well, I mean, yes, but in the same way that an audit is an action against a taxpayer. That's very different, though. That's the agency taking steps to examine the taxpayer. Well, I would say it's not really different if the revenue agent to whom the OVDI file was assigned says, okay, I want to bring you in and ask you a lot of questions. Don't do that. I'm just saying in some cases it's not. And if in some cases it's not, it seems like it's incumbent on your client to do more to show that in this case it was. Well, that's an interesting issue because, of course, the IRS would not give us any of the information in the tax court that we asked for because they said we're not disclosing it to you. Just to back up for a moment, you had started to elaborate, and up to a point it does seem like participation in the OVDI involves a lot of action on the taxpayer's part. They have to identify a lot of things and file certain information returns and other returns and identify various banks and facilitators. But then you started to say the IRS looks at it, that the taxpayer has to sign an agreement to extend the statute of limitations. Is there more on that? Because one thing that seems just generically different is that under the OVDI, the taxpayers are getting some kind of relief that if they don't participate, they wouldn't be getting. And I'd like to know sort of what your understanding of the generics that seal that deal. Sure. So they may get some relief that they would not otherwise get. So there is no guarantee that the taxpayer will receive immunity from criminal prosecution. And the IRS retains the right to pursue criminal charges if it determines that that's appropriate after this, what I'll call the comprehensive review, if we don't want to use the word examination. So I think first thing is the taxpayer is required to extend the statute of limitations for taxes and penalties. The taxpayer is also required to pay immediately the taxes, the penalty and interest, or make some sort of good arrangement to pay, as opposed to if you just stay in the shadows and take your chances, then maybe they can't find you or they can't find your assets. So I think those are the two things in particular, even if the IRS never asks any follow-up questions, never. And, of course, if the IRS is dissatisfied with the information, or, for example, in a case like filers uses the information that it gained from Mr. Shands to test the submissions made by the taxpayer, and it's not content with them. Then, of course, it can conduct a full audit and not just of the offshore issues, but all of the all of the taxpayers issues. The court already held that in the rubric of no jurisdiction that the action is not related. I see I'm woefully over my time. Our practice is to allow you time. And thank you. We have asked our questions and we'll give you a little bit. Thank you. Lost my train of thought. Sorry. I have questions, but I don't know where you are. Go ahead. Go ahead. The government that shans neither shans whistleblower claim, nor his tax petition alleged the IRS actually initiated an examination of any particular program participants. You agree with that? Yes. And can I qualify that by saying, because we don't know and we asked in the tax forward for them to disclose the information that would have allowed us to do that. Fair enough. We were unsuccessful in that effort. That's helpful. Appreciate that. Shans cooperated in everything in the briefs. I know Judge Pillar already confirmed this, but it's not under seal. It's open. I can say anything that's in the briefs. Shans cooperated in a federal criminal investigation of Swiss bankers. That's true, right? That is correct. With a fair amount of drama, much beyond what you see in a typical tax case. I mean, he wore a wire that was provided to him by the IRS criminal division. He had meetings with Renzo Godola where they recorded the conversations and two days later, Renzo Godola was arrested. And so it has been the dominoes began to fall from that. Is he a target of the federal criminal investigation? Yes. And he obtained immunity. That's correct. And he got eight and a half million dollars. Correct. From the top line folks that he identified. Those are the people that I identify as the top. So there are the eight or nine people, individuals who are the Swiss bankers and BKB, which was the Swiss bank. And from those folks, the Internal Revenue Service collecting proceeds in excess of 60 million dollars. OK, so he was suspected of violating federal criminal tax laws and he came out of it with eight and a half million dollars. He had offshore accounts. Eight and a half million from the U.S. Correct. And then my last question has to do with the related action argument toward the end of the brief. Yes. And jurisdiction. OK. I think that there's an argument that. Obviously, a court always has jurisdiction to say it does not have jurisdiction. But I think there's even beyond that argument that the court had jurisdiction, the tax court to stay on the merits. Whether this was a related action. And assume for the sake of this question that I think it was not a related action. Is there anywhere in your briefs where you make the argument that even if it's not a related action. The tax court at least had jurisdiction to say that on the merits, it's not a related action. I think we do say that we do say that where we talk about the fact that. Denial because it is not a related action is a determination regarding an award, and that is the predicate for which the tax court has jurisdiction. So to decide that it is not a related action for reasons other than whether an action actual whether a related action has to itself be an action separate and apart from the original top line action. The fact that the government in the award memorandum talked about, well, you didn't identify folks and you did. So those things, I believe, are determinations regarding an award that would have given jurisdiction. What would be helpful is if maybe when you come back for rebuttal, if Judge Pillard will allow it. If you could point me to the page in the quote where you make that argument. And then just to confirm, if we think this is not a related action and the tax court should have said, we have jurisdiction to decide on the merits. This is not a related action and it's not a related action. That's something you want to, if we conclude it's not a related action, that's something you want us to say. No, I think that the tax court has to say that because the tax court never reached those issues. The tax court just says we don't think it's a related action. If we conclude that it's not a related action. Do you want us to send it back to the tax court so that they can follow our instructions to decide on the merits? It's not a related action or is it all the same? Should we just defer? So I think that if you believe, I think you should not decide that it's not. You know, it needs to go through the, you know, whatever the fact finding processes that the tax court would undertake. And I would think that we might be able to change your mind about that. If, in fact, we had the ability to get the facts that we asked for in the tax court and to flesh out those issues. What do you need from factually to determine whether the actions against the OBDI taxpayers are related to the information provided? So, I don't think we really need anything except I need to understand what is the factual basis for the position that the government has taken that these folks are not related. You know, that they did not pursue the OBDI proceedings based on the same facts that were included in. So, if they are going to make these arguments, then I think I'm entitled to know what are the factual predicates that they rely on. You haven't challenged the regulations, right? Correct. So, the Treasury Department regulation defined based on whistleblower's information when the whistleblower information substantially contributed to an action against a person identified by the whistleblower. And the information Shams provided did not identify any U.S. persons who were COBI participants, did it? But then it says, or proceeds collected in the action or in any related action. So, if you look further at the regulation. Wait, wait, wait. So, you're not relying on the baseline? You're relying on related action? I think I can meet both of those tests. But if you're asking me why it matters that they're not identified, then yes, I would point you to the related action. Wait, wait, wait. So, do you have a separate argument? Because if the recovery is based on information provided by the taxpayer, you don't need to get to related. Correct. And so, my answer, my question is, what is your argument? And have you made it here? That the recoveries against the OBDI participants are based on information provided by Shams. In particular, identities of U.S. persons who participated in OBDI. And so, what I would point the court to is the client lists that the IRS recovered from Godola, from BKB, and the other bankers. The IRS required those folks as a condition of their arrangements and the deferred prosecution agreement with BKB that they provide those client lists to the government. So, the government had the names and identities of all of the clients as a result of the information that Shams provided. But my understanding is they did not choose to pursue those taxpayers based on the list. They thought, potentially, this is a much bigger issue. We are going to put the onus on the taxpayers, give them incentives, and do that through OBDI. And if that's correct. So, there was additional compulsion, I think. In addition to asking for the client lists, the government then required the bankers in BKB to tell their clients, we've turned your information over to the government. And also to encourage them to enter OBDI if they wanted the prospect of avoiding criminal prosecution. I understand that the notice didn't come in the mail that you've been selected for an audit. But there was a fair amount of compulsion. And then the federal prosecutor in the Renzo Godola, I mean, this is why his statement was so important. Because he confirmed then that the information that Shams provided really is what prompted these folks to go into the OBDI. And if you look at the Awad case in Whistleblower 14376, it says that the government uses that information if it prompts folks to enter into a voluntary disclosure program. But the standard is not by forecausation, as you know. It is substantially contributed. And just backing up before my question about whether the service relied on the lists, as you yourself described it, the information, the lists were obtained not from Mr. Shams, but from the targets that he initially identified. And so under the terms of the rule, that seems to put it too far of a remove to be counted based on his information. So if, in fact, the court concludes that, then I would direct you to the related analysis because that closes that gap. It's example one in the regs about what constitutes a related action. And that is when Whistleblower provides the identity of the taxpayer and the taxpayer's accountant, the IRS secures from the accountant a client list. And to the extent that folks on that client list were engaged in the same conduct that the Whistleblower originally identified, those people are related actions. Even though they were not identified by the Whistleblower, but they were derived from a client list produced by someone who was identified ultimately through the Whistleblower information. If we conclude that the IRS did not proceed with an action against another person based on the facts described in the information Mr. Shams provided, then you would lose on the related analysis. So I think that goes back to the question that Judge Pollard was asking, which is, is the language that you just read mean that the tax court was right in saying that every related action must itself constitute a separate and independent administrative action? Or is the administrative action that we're talking about the administrative action that was launched by the filing of the Form 211 and then these are all just sort of strands that flowed from that? I think it's a little different from what you just said because I think the tax court was saying that to be a related action, it has to be an action. And the action has to be against the taxpayer, et cetera, all the things we've been talking about. But where I think the tax court may not have been correct is by saying that that's a jurisdictional issue, that it has to be a related action for us to have jurisdiction. On a jurisdictional point, I think perhaps the court could rely on the original action because what your client did was provide information that did result in a proceeding against GDOLA and all those other people. And the claim here is that the OBDI proceedings are a related action to that. So I think that original action part of it provides jurisdiction, but the related action part of it, the definition of it, would mean to prevail on the merits, you would have to show it's an action, which for the reasons we've been discussing, I don't think it is. So I'm not sure I understand your question. I don't think it would... And it said that that's a jurisdictional bar. Because there was no action. Because there was no action. Even if we think that there was jurisdiction based on the original action, it would still, on the merits, not be an action, and you would lose on the merits for the same reason. But it makes no... It's like, what bucket is that? Is it jurisdictional or is it merits? But it would make no sense to conclude that what happened is administrative action for purposes of jurisdiction, but not administrative action for purposes of the merits. You're mixing up the two, though. For purposes of jurisdiction, we're talking about the original action. But on the merits, you have to prove that this is the OBDI proceedings are a related action in order to recover for it, but they're not an action, so you lose on the merits. I don't think that's right. And I don't mean to disagree with you, but I don't think that there is a separate analysis for whether or not there has been an action, an administrative action, against the taxpayer for purposes of jurisdiction. Doesn't the related action have to be an action? I don't. I think the action that the related action language refers to is the original action. There are two actions. There's the original one and then whatever is related to it. But it is relatedness that is... It is just all part and parcel of the original action. It's not that they said, okay, well, all of a sudden, stop on GDOLA, and now we're going to start on something completely... But on the merits, what are you recovering for, then? There has to be a second action that's related that you want to recover for, and that has to be an action. But it is. It's the OVDI proceeding is the action. But if we don't think it's an action because it's not against the taxpayer and it's brought, initiated by the IRS, then you lose on the merits, but not on jurisdiction. I think that would be a very awkward conclusion to say that we think that under the related action analysis, the original action is enough of administrative action related to the client taxpayer. No, no. It's not an original action to provide jurisdiction. I understand. But then when you try to decide whether you should recover because there's this other thing that's related action, that second thing has to be an action. And the tax court found that it was not. But it seemed to be a very strange state of affairs where the taxpayer could rely on the overarching action to get into court, but then say no action was taken with respect to me for purposes of the merits. I mean, that doesn't seem to make any sense to me. That's exactly what they have to do in order to evaluate a related action claim. They have to decide whether there was an action, that there was a related action. Right. And that determines whether they, you know, relied on the same facts, whether they, you know. And you think that goes to jurisdiction, correct or not correct? I do not think it goes to jurisdiction. That's what Judge Pant's point is. But I think that. I don't want to speak for Judge Pant. Right, thank you. You're saying it better than I could. Thank you. But I don't think that goes to whether or not there was an action. I just think it goes to the merits of the claim, right? I mean, did you, you know, in the same way that I say that whether or not they used the information, what is a causal analysis as opposed to a jurisdictional one. So whether or not they used the same facts to recover the proceeds, I think is a causal analysis, not a jurisdictional one. And so I don't think it requires, that's not sort of the proof. It's, you know, is it related enough to, you know, say that the information that you provided was a substantial cause, but it is not necessarily saying that it establishes the existence of an action. So the regulatory definition of the term related action is that it's an action against a person other than the person's identified in the information provided and subject to the original action. So we have two actions here. So if the original one provides the basis for jurisdiction, you still have to prove recovery under the related action, the second action. And if that is not an action at all, related or not, then you would lose on the merits, correct? Yeah, although I'm not sure that the jurisdictional section or LEA would support sort of splitting actions into one for jurisdiction and one for merits. I mean, it's a little bit like in civil procedure, you have a federal claim, and then do you have pen and jurisdiction over a state law claim? And the pen and jurisdiction analysis is, you know, what's the relationship between them? And you don't have to separately have state court jurisdiction over the thing that comes in. So I guess my question for you is, if the administrative proceeding with respect to the top line taxpayers suffices to provide jurisdiction for the claims against the OBDI participants or the money recovered from them, then one would look at whether those recoveries were based on or related to the original, the information originally provided. Is that the framework you're using? I think that's right. Can I give you a hypothetical? So in a couple weeks, I'll file my tax returns. And obviously there was an original action here from Mr. Shance. Imagine he goes to the IRS a few months from now and says that Justin Walker's tax returns, I'm entitled to 30% or whatever of those returns. And his filing of his returns is a related action to my original action. And the tax court thinks, well, I know that's not a related action. Does the tax court have jurisdiction to consider the merits? Or does the tax court not have jurisdiction over his claim that he's entitled to 30% of Justin Walker's taxes? I think you're going to have to tell me something else that has happened. Well, there's no relation between us. I'm trying to bake in that my filing of my tax returns is actually not at all related to anything Mr. Shance has ever done. But he says it is. He goes to the tax court and he says, I have a related action, and you have jurisdiction to consider whether I'm entitled to 30% of Justin Walker's tax returns. Because a long time ago, you had jurisdiction over my original action. Do you think the tax court has jurisdiction over this new claim? I do. And I think on the merits, it just has to say there's no relationship between the two. And that's Judge Tan's. Thank you. That's helpful. Thank you. May it please the court, Leah Vetta for the commissioner. Am I properly audible? Is the height correct? Yeah, I can hear you. I'd like first to speak to Judge Tan's analysis of how, positing that the original claim that resulted in the $8.5 million award would give rise to related action jurisdiction. And the answer to that question is apparent in the timing here. Because this claim, with respect to the OBDI, which, by the way, was not directed to any particular clients or members of client lists. As the court has observed, the claim presented to the whistleblower office, and originally to the tax court, involved the increase in participation in the program attributable to publicity, which in turn was attributable to the success of the prosecution that Shance enabled. He wanted 30% of the entire proceeds collected. That was the claim that was denied by the whistleblower office and subject of the tax court petition in 2016. He received the $8.5 million award in 2020 in a separate determination, which he did not appeal. So if that is the predicate for jurisdiction, it can't relate back to the filing of the petition, in this case, four years earlier. Jurisdiction has to be inherent at the time of the filing. Well, if the claim is that it's related to the other jurisdiction, it's kind of the way I'm thinking about this. It's really the original claim, and this is also related to it. Because this claim came first. This claim came before the Godola, et cetera, claim? It certainly came in terms of the finality of the award. Arguably, there were dominoes, and it's unclear in what order the dominoes did descend because they were sort of bifurcated dominoes. There were the initial bankers that Shance actually participated in the investigation. He did wear a wire. Then there were other bankers who were revealed by the bankers who were caught. There was a bank that entered into a non-prosecution agreement, and there were two actual U.S. taxpayers who were clients. Are you asking for a temporal test? Beg your pardon? Are you asking for a temporal test that has to come after? No, but what we're saying is that if the action is related, then it has to be related to an outcome, not simply, I claim everything. I claim Justin Walker's taxes. I claim Julia Vetta's taxes. I claim Abner Mikvah's taxes, et cetera, et cetera, et cetera. Then if one of those should succeed, eventually that relates back to the tax court petition that I've been litigating for five years now. This is not an argument I saw in your briefing. No, because I'm addressing something that's come up now. We did not take the position that there was no jurisdiction ex ante here because it was contingent on an outcome in the claims regarding the bankers. Those were judicial proceedings. They were criminal proceedings. They were ongoing. And I'd like to go to your point. Let me just make sure that I'm catching what you have put before us. You said that there's a temporal problem because although the information provided that did substantially contribute to some recovery by the service went to these top line foes, that was provided to the service before the OBDI taxpayer monies were received by the service. May I? That's not necessarily the case either. The form 211 was filed in November of 2010. I don't have precise dates for when all of these different bankers were indicted, but it was over a prolonged period of time after OBDI concluded. There was no way to foresee that the outcome of the OBDI claim would be contingent on any subsequent outcomes with respect to that. That's not what I was saying, actually. There was a form 211 filed. The IRS started proceedings, both administrative and eventually judicial, against the top line taxpayers. And then it got the OBDI up and running and started to get recoveries from OBDI foes. Exactly. The order is different. And then ultimately resolved with the big fish? The claim came in in 2010. So the excitement all happened in November of 2010. Shands wore the wire. Godola got arrested. Godola got indicted. Shands filed a form 211. OBDI began in February of 2011, three months later. It continued through September of 2011. Shands did not submit the claim requesting 30% of the OBDI proceeds until June of 2012. The criminal proceedings were ongoing. New criminal proceedings continued. He continued to arrive against various bankers. Shands then would go back to the whistleblower office and say, please assign a claim to this banker. This is a related action to my participation in the investigation in 2010. They did so. These claims in the aggregate were rolled up into the $8.5 million determination. Those were all the related actions. I think all of that is more than but consistent with what I said. So it would help me because you've reacted strongly against my characterization, and so I'm clearly missing something. And also the definition of related action goes to the facts described and documented in the information provided, not based on the outcome of what happened with that. Correct. Correct. And we're not suggesting that this is inconsistent with that reading. Correct. But what you don't know when you submit the OBDI claim is how many or the form 211 in the record is very clear and very broad. The form 211 says bankers, banks, and U.S. taxpayers, which is why the OBDI claim could be plausibly stated. He's saying in the aggregate, I had an effect on many, many, many, many people who I can't precisely pinpoint. And as the court has observed, once that $8.5 million award came down, and once it became clear, too, that there was not going to be any recovery through the OBDI participation, he tried to change horses mid-race and say, well, actually, my claim is only with respect to people whom you later learned of through client lists, and that's the important factual circumstance here. You didn't have those client lists when he stated the claim. You're not proceeding based on his information with respect to the client list at any point during OBDI, which is complete at that point. This all comes later. Any related action that's a result of information that you learn from investigating people long after OBDI is completed is not information that you proceeded based on in the context of OBDI. The client list is a little bit tricky because there seems to be a tension between the regulation defining related action, which says that people have to be identified by the taxpayer, and the example one, which suggests that client lists of people the taxpayer identified might make a difference. I guess one thing that I'm sensitive to is when and whether a whistleblower might be entitled to information from the service as to how or whether the service has relied on. Well, two points in regard to that. The first is that because the OBDI claim from the beginning was not with respect to individuals, the record is clear. All of the FOIA requests and discovery that Shands attempted to take during the administrative proceeding was not taxpayer-focused, and he expressly disavowed any interest in individual taxpayer information. You can see at Joint Appendix 239, 251 in his petition, he says, we're specifically excluding any taxpayer information. He did not seek discovery to correlate pursuit of individuals with clients of the bankers whose prosecution he assisted in. That was not part of the claim. That was not the claim that was decided by the whistleblower office, nor the one presented to the tax court. That's point number one. Point number two, with respect to the regulation, is that identification can be read multiple ways. He doesn't need to say, Judge Walker, Judge Pillard, and Judge Penn. He can say, judges of the D.C. Circuit, or the panel that sat on April 2nd. There are ways you can point to someone without a precise identification that would be sufficient under the regulation. He did not seek to establish that here, and he does not allege that he did. He found, I want to ask about his original related action claim. How much money would he have gained if he had succeeded on the original related action? The OVDI claim? 30% of the aggregate collection of proceeds in the offshore initiative from 2011, which was in the billions. So many, many, many, many millions of dollars. Do you know how many billions? There are two places in the record. At one point, they said that there was some category of claims in OVDI where we collected a billion dollars in proceeds, and then in a different category, there were two billions. So if you say there were $3 billion, a third of that is a billion. And these are absolute ballpark numbers. There are more precise numbers in the record. But he didn't have that information at the time, and frankly, neither did the IRS. That was what the FOIA requests were about. We actually had to put that information together in response to the discovery he sought to take at the administrative level, which did not, I reiterate, at any point adhere to the identity of participants in the program, nor to their relation with him. Under a different procedure, he could have. I think the reason why he structured, and I'm speculating, the reason why he structured his FOIA request as he did was to avoid the prohibitions in the Internal Revenue Code on Disclosure of Individual Taxpayer Information, Section 6103. He didn't want to implicate that because it wasn't relevant to his claim. It didn't matter what their names were. He wanted 30% of everybody because his theory was not, this is related to me helping Swiss bankers, their clients. His theory was, as he stated, I increased participation in the aggregate in this program because I helped so much, and I did so much good. Do you think he did out of curiosity? I think he did. Do you think he did what you just said he claims to do? He wore a wire to a meeting with a Swiss banker who got another Swiss banker on the telephone, and they were able to establish elements of a conspiracy right then. That's what he did. And his argument is, if you go six degrees of separation out from that, there's some connection. He was somewhat helpful in making OBDI a success. And I'm just wondering if you think that's correct. The whistleblower office memo goes into detail on all the reasons why his participation in the investigation has nothing to do with OBDI. If one were to, for example, look at but-for-cause. He was not a but-for-cause of the OBDI. Another one had already existed. This was a second generation OBDI. Well, was he a but-for-cause of the second generation of the OBDI? He was not. He was not. The IRS had already planned to do it, and then there were two more after. So this is number two. Wouldn't we need to have a factual record to rely on that? I guess rely on it. To say that there was no relationship? I mean, that's not apparent from the record. What you have in the record here in the memorandum from the whistleblower office is we tested his claim. The claim he actually made is the claim that they tested. They said, we looked at statistics, and we said, we do not see any appreciable increase in OBDI participation that is in any way correlated to publicity, which we can see in time, of the arrests, prosecution, and cooperation of bankers who are the related actions to Sham's claim. Page number there. That's a good question. It starts at page 320. He says, his theory is that the publicity from Gadula's prosecution and the threat of him providing information on other Swiss bank account holders induced many OBDI participants to come forward and volunteer in the probes. Just the page number is fine. Yes, 320 and 321. Great. And 322. I take that you do concede that the IRS took administrative action of some of the participants in the OBDI, but the point is it's completely independent. We can't concede or not concede. What we can say is it's not categorically impossible that someone who participated in OBDI ever got audited. It could happen. We take issue with the framing of OBDI proceedings. There are not particular OBDI proceedings, as you've observed. It is an opportunity to taxpayers to come forward, cure filing deficiencies, report information that was required to be reported, and step into an agreed penalty structure. At pages four and five of our brief, we discuss how that works. So you say step into an agreed penalty structure. Maybe you could pick up where Ms. Blank left off in terms of explaining how typical and then maybe a complex OBDI situation unfolds. So there's a uniform penalty structure and there's a non-prosecution. You come in and you pay your back taxes, you pay interest, and you pay penalties, including 20% of your account's peak value. And you can be settled up. That may be enough. But you are providing information to the IRS, which it then does review and analyze. And we know in contrast to what was suggested before, that does not rise to the level of an administrative action under the regulation. You can be settled up, meaning? Meaning that you are no longer in any dereliction of your filing duties. You no longer owe any taxes. You comply with the terms of the program. You get something. You get a non-prosecution agreement. Yes, you get relief from prosecution and you get relief from further penalties, which can accrue if you don't cure these deficiencies. And that is presumably a document signed off by both parties. I believe that's correct. And in some cases, when the IRS is reviewing and analyzing the information provided or possibly even investigating matters that are raised by the information provided, that's still not necessarily an administrative action. It is administrative proceeding at that point. But an action is specifically defined in the regulation as an all-over portion of a civil or criminal proceeding against any person that may result in collected proceeds, for example, an examination, an audit, a collection proceeding, status determination, or criminal investigation. Could those things have happened to one or more OVDI participants as a result of information learned in their voluntary disclosures? Of course. We can't categorically say it couldn't have. That's not a concession. It doesn't result in collection because it ensues after the collection has been fully made? No, it could result in collection if there were a subsequent proceeding. You're saying it's not a proceeding. When you were reading the definition, I thought you were saying it's not a proceeding because it doesn't result in collection. You were saying it's not a proceeding because? I'm saying it's not an action within the meaning of the regulation until the IRS pursues an avenue to lead to additional proceeds outside of the amnesty provisions, which are kind of default conditions that you could achieve through compliance. Why? Because that would be the amnesty. They're basically saying, holding over someone's head, we could bring a case against you. We could? I mean, implicitly? That's not the position we're taking. And I would refer the court to the factual situation in the Lease Act case where we had an undisputed action, an audit, initiated based on a whistleblower complaint. And during the course of that audit, the issue identified by the whistleblower was investigated and found to be correct. The taxpayer had not made the errors that the whistleblowers had alleged. But then the IRS saw, in a different tax year, an unrelated issue and proceeded with that, investigated that issue, recovered enormous proceeds, and the whistleblower in Lease Act said, that's still proceeding based on my information because you wouldn't have done this audit except for me. And this court held that that was not sufficient for recovery. We hope there was jurisdiction. Okay, so we can speak about jurisdiction. So that's one of my questions. It's the notion that there's, I mean, I find the tax court odd, the decision odd in saying, resting on the lack of an administrative proceeding. Because administrative proceeding is basically very broadly defined. But you firmly subscribe to that reasoning. We see no error in it. But you have to keep in mind also that the tax court is looking at the claim that was before it, the claim that was in the petition. It wasn't saying, could U.S. clients, identifiable based on client lists, later received in criminal investigations that are marginally related here. I mean, that was not the record. That was not the question before the tax year at all. The question was, did Shands' information cause OVDI or cause an increase in participation in OVDI to such an extent that he added that value in a compensable way? Could he get a whistleblower? The courts seem to imply categorically that an OVDI process is not a proceeding. And I think the real answer is, which you conceded, sometimes it can become one. But I think that what's important for our purposes is it's not categorically one way or the other. It's sometimes. And isn't it correct that because the appellants have the burden for jurisdiction, they have to show that it was one in this case? First of all, absolutely, yes. But secondly, I would go back to your framing before of how each stage has to suffice. So the fact that administrative proceedings are conducted that may, at some point, in certain contexts, have risen to the level of regulatory definition of an action is not enough. And the tax court did not take the position that that never happened in OVDI. What he said was no one is joining OVDI as an action against itself. That's not the IRS taking an action against you when you join. And that is absolutely correct. It's voluntary. But it can become an action against that person. An action can arise in the conduct of that person's dealings with OVDI, just as when you file your taxes, you can get audited. I promise nothing. But you can, any of us who file a tax return get put in the audit lottery. It happens. And there are some taxpayers who are under continuous audit and are known to be under audit. These are proceedings that can be an action within the meaning of the regulation without establishing tax court jurisdiction. And I'm going to go to the point that Judge Walker made before, which is that when you – it cannot be – the statute cannot reasonably be read, and I think the Lease Act decision cannot reasonably be read, to create presumptive jurisdiction over any whistleblower claim where a taxpayer is known to have been under audit. It simply cannot. So what's your position, then, on my question about jurisdiction? Is the finding of whether there's a related action or not, is that jurisdictional or is that on the merits? We would refer the court back to the language of the statute, which is where we have to find our jurisdictional provisions. And related actions are defined in the regulation. So it doesn't help us to look at the statute and say, jurisdictionally, what do you need here to have jurisdiction over a related action? I think it was a yes or no question. It is a yes or no question. Is the answer yes or no? Sadly, well, no. We do not believe that there's jurisdiction over a related action where there is not jurisdiction over an initial action. Okay, but if there is, like in this case, then there is jurisdiction in this case, and it's a merits question whether it's related. Exactly. There is jurisdiction over a determination regarding an award. Did you get a determination regarding an award in your related action? Well, a determination regarding an award requires that the Secretary have proceeded with any administrative or judicial action based on your information. Those are the jurisdictional prerequisites after LESAC and AFTRS. Did that happen in a related action? And related actions are discussed in the statute, so we can read that as a jurisdictional qualification. We don't have to resort to the reg. Now you're in a world where what is the prerequisite showing here? If there isn't an initial action, what can there be related to? Am I stopped there? And I think you have to be, so the answer then is no. But why isn't it correct that the original action is the original, I guess what Judge Pillard has been calling the top-line people. Top-line people. And then the question here is just whether this OBDI stuff is related, which is a merits question. Because the way the statute is read, it implies that related action is along with other things. It's a parenthetical. It's based on information brought to the Secretary's attention. We would posit. Including any related actions. It all seems to be one determination. So once there's jurisdiction, which everybody agrees there is with respect to the original action, then the question is just is the second part related or not? And that's a merits question. Is it a second determination or is it the same one? Now we have several related actions in this actual award determination where he got the money. There are a number of bankers and there's a bank. Those are related actions. We don't dispute that. And a claim that was properly formulated on which the IRS proceeded based on that same information, if it was in that sequence of dominoes, it would be under the same grant of jurisdiction. So the answer in that circumstance is yes. I understand that. I'm having trouble with that too. I don't understand why this is distinguishable. It's a chain of dominoes from the other related actions. So I came in thinking that what's jurisdictional is proceeded with action and recovered money. And what's merits is with the money that the whistleblower is seeking based on the information the whistleblower provided and or related to information in some further investigation related to the information provided. And I don't really have a clear sense from you, and I thought that was what Judge Pan was asking, whether we can think about related to as a merits question, you may still win. I understand very clearly that you think there's no basis here, but what we're trying to do is sort out the ground. And one of the things that our court has struggled with is avoiding treating every issue as a jurisdictional issue because that's not the way we ordinarily read statutes. Treating something as jurisdictional, the Supreme Court has told us many times is disfavored. We should only treat as jurisdictional things that clearly are. So what, in your view, must we treat as jurisdictional? The IRS must proceed with an action based on information brought to the Secretary's attention by the whistleblower. If that happened in the related action, then it is subject to that same jurisdictional. So that's a yes to Judge Pan's question. You do think that based on is jurisdictional? We do. We do. But it merits as well. And there are two reasons it's based on. And this goes to the question you raised before, which is can we look at this two different ways? Because based on, in a jurisdictional context, means that there absolutely needs to be an element of causation. And the regulation does say but for. But that's the regulation. The statute does not say that. We would certainly submit there has to be proximate causation. And in the case of an OVDI participant, his voluntary participation disrupts that. If they had properly, if they had stated a claim from the beginning that said U.S. clients of these bankers. And, in fact, they did to some extent state that claim because two such clients were found and audited and were part of that award. And there is jurisdiction over those and over any others who then are related actions to those top line investigations. That's the jurisdictional reading of based on. Then there's the merits reading of based on, which is how substantial was their contribution? Was it an abuse of discretion only to give you 15% instead of 20 or 25 or 30% of the proceeds collected? Those are two equally reasonable readings of the term based on. But you cannot decouple causation from the jurisdictional determination or else you're in the universe where anyone can blow the whistle on Judge Walker's taxes and not in a way that is fruitful to anyone. It does not entitle anyone to scrutiny into the affairs of another. Can I get your reaction to this? I think that everything you just said might be right and not be right. I think it's hard and I think, and by it, I mean, whether the related action question is jurisdictional or merits. I don't think that the blue brief argued that even if it's not a related action on the merits, there is still jurisdiction. And because the blue brief didn't argue that, I think that that argument was forfeit. Thoughts? Agree. Agree. And that's a simple answer to a complex question. But I have gone well over my time. I'm happy to respond to further questions that the court has. I have a question of sort of implications of a potential ruling in this case. Aren't there instances, or might there be instances in which a whistleblower works with the government in advance of filing a form 211? So the word request doesn't need to be forwarded to, for examination in order for the IRS to proceed with an administrative action based on the information provided by the whistleblower. That's what happened in this case. In other words, The whistleblower office is not a prerequisite to the IRS proceeding with an action. Well, for an administrative action, it can be. This was a judicial action. This was a criminal investigation. And downstream, there can be more. But in a criminal investigation, you're almost always going to be dealing with IRS CI before you're dealing with the whistleblower office. And the whistleblower office has a coordination function. And it does reach out and it looks at the form 211, and it will contact the relevant places in the IRS where these investigations are taking place and say, is this guy helping you? Are you getting good information from this whistleblower? Are we actually proceeding based on his information? And then they track the collection of proceeds. And that happened here. That's what happened in the criminal proceeding. The administrative referral is inside the IRS. And it's when you're going to an audit, not when you're going to court, not when you're going to an indictment. And the regulation includes multiple different examples of actions, some of which, if you observe correctly, won't require an administrative referral from one part of the IRS to another because the part of the IRS that's concerned with the proceeding with that action is already underway. And they're already working on it. The whistleblower office just will synchronize with them and monitor and make sure that the proceeds are accounted for so the whistleblower gets his fair share. So I guess one of my concerns with the notion that based on is jurisdictional and that I take your point that related to also is jurisdictional. In that you cannot have jurisdiction over a related action without a predicate action. But the predicate action could be the top line action in this case if the facts were different. You could state a related, another related claim to the top line action in this case. There are arguments about administrative finality. But based on is it can be quite a fact intensive consideration, which is why my instinct was that the service would not want to claim that that's jurisdictional and that it functionally shouldn't be treated as jurisdictional. We submit that the statute needs an element of causation that's correlative. And we derive that from the based on language. So you're treating based on as but for cause for jurisdictional purposes and as substantial. Approximate cause for jurisdiction. But causation. I thought your brief said that, or maybe it was the. The regulations. We are. Yeah. Okay. The regulation says, but for, we are most comfortable with that. But that, but we're, we're also not suggesting that jurisdiction provisions come from it. So my question was, am I correct? That I heard you say that for jurisdictional purposes, based on means, but for causation and merits. It's a substantiality of contribution contribution. Yes. Okay. Is that in your brief? Certainly not to that degree of granularity. But it is consistent with the position we take in our brief, which is that the IRS must proceed with an action based on that information. And it's consistent with this court's holding exact, which where that was a stipulated fact. And consistent with this court's holding in Lee, which said where the IRS clearly has proceeded with no action. There's no jurisdiction. Has the IRS taken any positions in this case that are in conflict with the positions it's taken in other cases. Not that I'm aware of. Is it important whether we label this jurisdictional or merits, because it seems like the IRS and the tax court have to do the same work either way. Sort through these issues and it, and before Lee, you were deciding everything in the merits anyway. Yeah. It would have been more of a six situation. Then I'll be one situation. And I think that's the, that's the only distinction. But as a practical matter, speaking for the service, what, what rides on that? What's the practical shot of saying that based on or related. Sure. Sure. Well, the practical upshot is that many whistleblowers. Are looking for access to taxpayer information in an audit. And what appear to. An outside viewer to be barriers to the whistleblower procedures are actually taxpayer protections against that invasive level of scrutiny against me, filing a whistleblower claim against a taxpayer. I know nothing about in order to obtain access to his tax returns. So such gatekeeping as you see in these whistleblower actions comes from that. It comes from a place of, we don't want strangers getting access to taxpayer information, but we do want people with information. We don't have to help us pursue collection from these taxpayers and we want to reward those people. So in judge Walker's hypothetical, if somebody just tried to get his tax returns as a related action, if the IRS were able to say, we have a jurisdiction over that, they wouldn't even look at his information. If it was a merit claim, because it was related to something they did have jurisdiction over, they would have to look at his records. They might. I see. Well, I don't like that. I mean, another way of looking at it is that you're making a fictional something that is completely unrealistic for the taxpayer to have information about. I mean, the questions about taxpayer privacy and privileges and what's obtainable are, those can be treated as merits questions and the IRS has quite an arsenal of defenses for taxpayer privacy. They can. And I also, I want to reset the premise there because the whistleblower proceeding in the tax court is a review of a closed administrative record for abuse of discretion. It's not a de novo proceeding. You're not getting a trial. You're not getting discovery on things you don't already know from the proceeding below. And whistleblowers, again, have been litigating mightily in attempts to get there. And the protections exist so that that can happen. Do we, in this case need to decide the distinct question, whether the service took administrative or judicial action against the OBDI taxpayers? Do we need to decide that question? You do not because the fact that they volunteered means that anything that happened or didn't happen subsequent to that is outside of the causal chain of the whistleblowers information. The IRS is not reading something you said and taking actual action based on information you gave us. We didn't have before. We are. That's an answer to the question, not a reason why we don't need to answer it. I just asked, do we need to decide whether the IRS took administrative or judicial action? And then you just said, well, they didn't because voluntarily. So, I mean, if there's a measure of a judicial action against the top line targets of this whistleblowers information, one theory is related to can piggyback on that. I hear you to be saying and responding. I mean, the tax court didn't decide that way. The tax court said we're looking at whether there was separate administrative or judicial action against the OBDI participants. And I guess partly I'm asking you whether it is tenable for us to go with a theory that was not the tax court's theory that there might have been jurisdiction based on. Well, this court can affirm on the facts here without having to reach the legal question of whether a hypothetical administrative action might have bestowed jurisdiction. And what you're saying is, why do we need to open that can of worms? Why do we need to make a legal determination here? And the answer is on the fact you don't, that's the low hanging fruit is because we know that it wasn't alleged that this happened at either the administrative or the tax court petition phase. Those are the questions that the tax court that we do need to decide that at least that Mr. Shams did not allege that the IRS took administrative or judicial action. He did not point to any particular instance of an administrative or judicial action that was attributable to anything. He advised the IRS that they didn't already know that they didn't otherwise learn. So you're saying that even assuming that there was some kind of administrative action later in the chain, it doesn't matter because whatever that was, was not based on. That's right. And I think that's, that's the position we took on that whatever may have happened and we can't categorically take a position that, like I said before, no one ever got audited. Someone may have gotten indicted. We, it was a large program. There were billions of dollars involved. All sorts of things can happen. And that's individual taxpayer information without needing to look at that. You know, that none of that had to do with Thomas Shams wearing a wire to. Because it was based on the voluntary. Exactly. Provision of information to the taxpayers and that breaks the causal chain from the text. Okay. So when you say we can affirm on the facts, the facts treated as jurisdictional impediment or. Treated as jurisdictional. Thank you. Okay. Thank you. Very quickly. In response to judge Walker's question, a clear in the brief. We included the argument. On page 39 of the initial brief. We say the IRS is determination that the OBDI proceedings are not related actions. Is a determination regarding an award under section 76, 23, before sufficient to best jurisdiction in the tax court. That's at the bottom of page 39. That's about the middle middle page 39. The IRS is determination that the OBDI proceedings are not related actions termination regarding an award. Under before sufficient to best jurisdiction as a result, of course, reverse. What if we disagree with you that it is a determination. Regarding. I'm sorry. I see. All right. I think about that. Okay. I think to answer the question that you are almost going to ask me, it depends on why you think that if you think it's because it's not in action, or if you think it's because you've gone to the merits. In my view, because it's not an action. Then. This is not an argument. That. We should not. The tax court should have denied on the merits rather than denied on jurisdiction. I don't I don't think the tax court did reach the merits of that decision. I think he just said, it's not. We don't have I don't have jurisdiction because. A related action has to be in action and OBDI can never be in action. And so there's no jurisdiction over anything. Okay. Okay. Okay. Thank you. I appreciate the follow up. So, I wanted to, if I can just a moment address. The suggestion that Mr. Shands did not ask for any taxpayer information. In fact, he did. He asked. For the number of taxpayers who disclosed accounts for each of the top line individuals and banks, including the amount of tax penalties interest. He asked the IRS to identify all foreign account related voluntary disclosure submissions received by the IRS related to the bankers or BKB. And so, in fact, he did specifically ask for taxpayer U.S. client taxpayer information. What's your response to opposing counsel's position that even if. He did ask for the information, even if. Regardless of. Whether or not there was an administrative action. We can decide this case just based on the fact that there's no, I guess, based on our causation because the. Fact that the program requires taxpayers to volunteer their information that kind of broke the chain. That's what they were relying on. And so I guess. The. Suggestion is we can just resolve this case. And say, even assuming all that were true, we have jurisdiction because it's not based on. But I don't think there is any authority for the position that a voluntary disclosure breaks the causal chain. And in fact, the cases we've cited in our program that that's not true. But why is it based on. Mr. Information instead, it's based on the voluntary provision of information. So, I think there are 2 reasons for that. 1, there's the statement of the federal prosecutors who said specifically to the federal district court. That disclosure spurred these taxpayers to enter the. And if you look at the case and. Whistleblower 1, 4, 3, 7,  you'll look and the court says there are 2 things we have to consider. 1 is. Did the whistleblowers information cause the taxpayers entry into the voluntary disclosure program? And 2, what's the whistleblowers information used in the examination of the taxpayers voluntary disclosure. That suggests that it's absolutely incorrect to say that once there's been a voluntary submission to. I, or whichever 1, it is that all bets are off. Because the court here is telling us, here are the factors that you look at post submission to a voluntary proceeding to see if the IRS use the information. Did it spur the entry into the voluntary disclosure program? And did the IRS use the information to test the disclosures that were made or to, you know, fill them out that even under that scenario, it's not based on the taxpayers information. It's still based on the voluntary. Information that was provided. Well, I think it depends on what the answers to the questions are, right? You know, it may well be that, you know, that the court would conclude that it did medical is spurring cannot be based on. Spurring is not based on the information. Well, the actual proceeding cannot be, it might be a but for causation, but it's not based on Mr. Shannon's information. If it's actually based on what the taxpayers gave, well, and doesn't change that. I understand that, but that's inconsistent with what the tax court has said in a wide and whistleblower one, four, three, seven, six, it disagrees with your conclusion that spurring is not enough. In fact, it refused to grant summary judgment in favor of the IRS in taxpayer one, four, three, seven, six, just because it couldn't make that determination on the record that was before it. And in fact, it said, we have to remand and we have to make a determination about whether, in fact, these people were spurred to enter the program, but of course we don't need that fact finding here because we have the federal prosecutor's statement that says it. Ms. Blank, do you disagree with Ms. Aveda's point that, or her position that based on, there has to be at least some based on nexus, but for causation for the jurisdictional break. No. And what's your support for that? I would point the court to list that. In that case, essentially the court said, all right, there was action here, whether or not that action was based on the taxpayers information is not jurisdictional. In fact, it is just the merits determination. And likewise, you look at the same cases. You look at the odd case, you look at whistleblower one, four, three, seven, six, and both of those cases say we have to look. Yeah, we have jurisdiction. And it's interesting that if you'll bear with me for a quick detour in that in one, four, three, seven, six, the tax court in its description of the background, very similar situation. So whistleblower files his claim. Taxpayers enter into a voluntary disclosure program. The revenue agent says, wait a minute, they're not qualified for the voluntary disclosure program because we already have whistleblower information, but we'll go ahead and let it, let them do it. And then the tax court said, very interestingly, that the revenue agent conducted his examination for taxpayers one, two, and three as voluntary disclosures. So it is quite clear that. As voluntary disclosures. Well, and then used further information to fraud and pull more information out of it, out of the text, use the whistleblower information to get more than what was voluntarily proffered. That's right. That's right. Or at least that was the argument. That was the reason for no summary judgment, because there was disputed. If you don't think there was, there's a nexus requirement for causation requirement that the administrative action had to be caused by the whistleblowers information. And what about judge Walker's hypothetical? But, you know, if he files an action and then, or there's an action against you, and then it can collect all the OBDI people or the part of Mr. Sam proceeds. I mean, there has to be sure. I mean, I think that's easily disposed of. I mean, the court has jurisdiction to summarily deny it because it's not related or it didn't, you know, they didn't rely on the information. It was, you know, something completely, you know, in the status sphere and not related to this. Like a fountain of youth for jurisdiction. Once you're in, you can always bring any claims you want to call them related. And you're saying the, the task core will all will forever have jurisdiction. No limiting principle. Well, of course, you know, I mean, they're just going to, you know, affirm the claim, because it's, you know, it has no basis, but that doesn't mean that there's no jurisdiction. I mean, if it is a determination regarding an award. Yeah, then the court has jurisdiction. What's an example of something that would have broken the causal chain here. So, I think 1 thing that would have broken the causal chain here is my colleagues suggest that. Mr. Shands was attempting to collect proceeds from every participant in the 2011. But let's assume that there was a participant in the that had offshore accounts, not related to any of these Swiss bankers or banks, but instead the account was in Costa Rica. And it was part of an entirely different tax scheme. I think the causal connection in that case would have been broken. Why wouldn't that person have been spurred? Well, I guess it's possible. He could have been spurred if he read the publicity and thought, oh, my gosh, I'm in the same situation. But if, if that person had not been tracking anything that was going on with Swiss bank accounts, and just entirely unrelated, because his accountant or other financial advisor told him, you know what, you need to get out of trouble. Let's do this. This program has been initiated. Then I think that would be something that would be entirely, I keep using related, but I don't mean it in that sense. It would not be causally related to the information that Shands provided. And so I think it would break the causal connection there because the federal prosecutor's statement would at least create a question. And I think it would be possible for the government to say, you know, there's no indication that this person had any role in the same tax scheme, wasn't on a client list, you know, had no involvement with any of the top line folks or the top line bank. What is the specific discovery that you requested that you were denied that you think would make a critical difference? So we asked, and this is in the motion to compel responses to the second request for production. Supplemental appendix S. A. ninety three and ninety nine. I'm going to give you another site supplemental appendix fifteen and sixteen. And you were saying,  you were describing it. Okay.  I'm going to go ahead and ask them to include in the record, the documents and transcripts reflecting Shands, extends the cooperation with the IRS. So the information that he did provide not in the administrative record. Identify all foreign account related voluntary disclosure submissions received by the IRS during the relevant time period, including the names of banks, bankers, and or financial advisors disclosed each that is intended to ensure that we're only dealing with the U. S. customers or U. S. clients of the top line bankers. So, this is a calling process of saying, okay, these are the people that we're only, we're only interested in the U.  clients. Provide the number of taxpayers disclosing accounts from each bank. With the toad and banker, the top line with the total amounts of taxes, penalties, interest, and miscellaneous penalties collected, and there was other stuff too, but those are the ones that I think are the most pertinent in terms of trying to identify which of the overall pool of participants were the U. S. clients of these folks. And so, you know, I got to have done with that, which was to pose them to see if they were spurred to report on the publicity. Well, the first thing we would have done is look at their file and see what happened. You know, where are they have to prove that they were spurred? Wouldn't you? Well, we could prove that they were spurred, or we could prove that the information. So, there are two, two ways to approach it. And so, if we see in the file, that the information to send a flurry of document requests and to talk a bunch of witnesses and said, you know, we don't believe your disclosures are full after they voluntarily correct. If they then use, correct, then, then I think we would have said, okay, well, clearly, they relied on this information in taking further action against, you know, after the voluntary disclosure happened. And that's exactly what the case in whistleblower was an examination or some further proceeding. And they would have had to have used information provided by a chance. Well, I don't. So, the 1st is the jurisdictional issue, right? Is there something that constitutes administrative actions? Something that's sufficient to be administrative action. And then the 2nd is, was based on, doesn't it? Like, so the actual examination would have to be based on chance information, which that's not your, your, your theory, your theories after they start the examination based on the voluntary provision of information. Then they used, it could be either according to 1, 4, 3, 7, 6. It's either they were spurred to enter the voluntary. By the threat or the compulsion that came into existence as a result of chance information. Or once they already entered the program, did the government use the Shane's information to test the submissions for accuracy? Or did they press, but he didn't provide any information about those taxpayers. So, how could he, how could the IRS be using chances information to test the, except in a very generic sense of he identified a type of. Tax evasion. So, essentially, I think what the federal prosecutor said is that as a result of the Shane's information, Godola provided an extensive example explanation for how the tax evasion schemes worked that allowed the government to understand that. Not only from the, the bank's perspective, but also from the taxpayers perspective, the client, the prosecutor didn't talk about shame. The prosecutor just said, it can't be doubted that Godola's guilty plea and the public nature of his cooperation and the prosecution's were benefits. But, of course, the, the US would not have, they got that information because of Shane's, because Shane's wore the wire when he met with Godola and Godola said, during the wired conversations, here's how we run this. Here's what we do. Here's how the causation again, because nobody's using the information from Shands or even the information derived from Shands in any of these examinations of proceeding. It's like, it's really far field. But we don't know, because we don't know, for example, what happened in those examinations. I mean, we've, we've gotten, you know, inconceivable,  that a taxpayer voluntarily gave information. The IRS decides to do an audit, let's say, and then in that audit, they say in Shands wore a wire with Godola. And therefore, how would that be relevant to some third party taxpayer that had nothing to do with that call? So, let's say that I enter into the voluntary disclosure program, and I disclosed 10 accounts, but I've got 12 and the client list that the government got as a result of the Shane's information. Shows that I've got 12. There you go. Go ahead. Isn't the pleading standard higher than that? Doesn't it require something less speculative than that? Well, I mean, to go back to George's point, I mean, the whistleblower then is in a real tough spot. I mean, essentially what you're going to say, I guess,  if that is the outcome, is that the IRS can effectively insulate its decisions from any review because it prepares the administrative record and has the discretion to put in it. What do you want to put in it? It relies on taxpayer privacy to say, we're not telling you who participated in what happened what we collected nothing. And so, if I am a whistleblower, and I say, I am providing information on the dollar, and that's going to generate proceeds, not only from the dollar, but from the US taxpayer clients. I can never collect from the taxpayer clients because I don't have any access into the IRS process to know what the IRS did with me. It seems like it's not an insurmountable standard because he already got a million dollars. Well, yeah, from different people. I mean, I mean, it's just going to say that. Okay. I mean, this is really effectively no different than saying that we are never going to recognize the payment of a whistleblower award in a because you can't get there from here. You can't get the information and we're not going to let you have it. Even though we know it's for all of these people to enter into. Maybe a fair question or not, but then there's something to be said for just sharing what's on my mind. Give me a chance to tell me why I keep thinking about line for one to the nail. The shoe was lost. You know, this for one to the shoe, the horse was lost for one to the horse. The messenger was lost. A bunch of a messenger of the battle was lost for one of the battle. The kingdom was lost all because of the want of a horseshoe. Now, you've got to go. Yes, there is a, but for relationship between no horseshoe nail and the king losing the kingdom, but there's a lot of steps in between. Well, I know, but, you know, fair is fair. This is a nondiscretionary award. You know, Congress decided this is how this is going to work. It is. And it was cost. Yeah. Yeah. And, you know, we have a federal prosecutor, you know, representing to the federal district court that, you know, this spurred and look, there are 12 client, 12 us customers discussed in the Godola indictment where the IRS said, these 12 clients entered into OBDI because of this information. So this is not just speculation. I mean, you know, when it serves the government's purposes, it's acknowledging the import and the helpfulness of the information, but then it doesn't want to pay for using it or even tell us anything about, you know, if the government had said, okay, here's information. Here are these, let's start with these 12 files. Here's what happened. Nothing. I mean, I think it did pay. Well, not for this information. They paid for the top line money they collected, but not for all of the many, many, many millions of dollars on which they have not paid. Right. Okay. Thank you. The case is submitted.
judges: Pillard, Walker, Pan